155 So. 885

## TENNANT v. STATE.
### 5 Div. 952.

Court of Appeals of Alabama.
June 27, 1934.

D. T. Ware, of Roanoke, for appellant.

Thos. E. Knight, Jr., Atty. Gen., for the State.

BRICKEN, Presiding Judge.

Appellant and deceased engaged in a mutual combat without weapons of any kind. They agreed to fight, and at first each of them drew their pocketknives, but before getting together they agreed to, and did, throw their knives away and "fought fair," with their fists only, by mutual consent.

The state insists that the deceased, named in the indictment, died as a result of a blow or blows inflicted upon him by this appellant, and the grand jury returned an indictment charging him with the offense of murder in the second degree, of which offense he was convicted and the jury fixed his punishment at imprisonment for a term of ten years. Judgment of conviction was duly pronounced and entered and the court sentenced the defendant to the penitentiary for the term stated. From the judgment of conviction this appeal was taken.

█ Having, without dispute, "fought willingly," no question of self-defense is involved, for one who willingly enters into a fight cannot set up self-defense. Lewis v. State, 88 Ala. 11, 6 So. 755; Brown v. State, 83 Ala. 33, 3 So. 857, 3 Am. St. Rep. 685; Sharpley v. State, 18 Ala. App. 620, 93 So. 210; LaFarlett v. State, 19 Ala. App. 596, 99 So. 737.

The evidence discloses that about fifteen minutes after the fist fight, or difficulty, the deceased complained that he had a pain in his chest and had difficulty in breathing. Physicians were called to him and treated him for some time. He died two weeks after the difficulty occurred.

█ It is insisted by appellant that the evidence was insufficient to establish the corpus delicti; in other words, that the state failed to meet the burden of proof necessary to show that the death of deceased was the result of the blow or blows inflicted upon him by appellant. In this connection it was first shown that immediately prior to the difficulty White, the deceased, was in normal condition and in good health. He was about the same size or possibly was a little larger man than defendant. The doctors who attended him testified as to his condition, and also as to experts.

Dr. R. C. Haynes testified:

"My name is Dr. R. C. Haynes and I live on the highway about 15 miles from Green's Store, and I am a practicing physician of Randolph County. I am a graduate of Chattanooga Medical College. I knew Dave T. White during his life. He is now dead. I was called to see him on the first Sunday in September around six o'clock in the evening. He was at home laying out on the front porch kind of propped up on a chair and some pillows and quilts maybe on that, kind of a pallet on the floor, and he complained of difficult breathing, and a pain in the chest. He said he couldn't breathe good and this pain was severe, and he continued that way until I give him two shots of morphine to ease him, and his breathing got a little better, but he still had difficulty in breathing. I stayed with him for an hour or two and went home, and I was back there the next day.

"On the first trip there I saw a slight abrasion of the left ear sufficient to bleed the least little bit, and I do not remember whether I saw the blue place that night or not, but there was a discoloration of the skin on the chest in the region of the heart, just a small size. It was about the size of three silver dollars. I did not see him until the next day or Monday and that is when I found the discoloration. I did not see him any more until he came to my office the following Sunday.

"He continued to grow worse. I went over his chest with the stethoscope and found what I thought to be some enlargement of the heart where the muscles had kind of given way and it was enlarged a little; an acute enlargement. He was still having a difficult breathing. This was the last time I saw him. The condition of his heart was caused from a blow or hard physical strain, I think, in my judgment. A hard blow in the region of the heart could cause the condition of his heart."

And on cross-examination he testified: "A blow on the front of the chest would not necessarily cause death immediately. In my 25 or 26 years experience I have never seen just a fist fight produce death until this one. His heart was the cause of his death. I had not dismissed him at the time of his death. I hadn't seen him for a week. He visited his son-in-law. He was up when I saw him last. He came to my office in a car. I remember about the time Mr. White died. He went to Clay County to visit his son-in-law or son I do not know which."

Dr. A. H. Owens testified, among other things, as follows: "I am Dr. A. H. Owens and I live at Ashland, Clay County, Alabama, and I am a practicing physician, and have been for 28 years. I am a graduate of the University of Alabama. I was in the army as a physician during the World War for about three months. I knew David T. White just for a few days during his life. The first time I recall seeing him was on Wednesday or Thursday of the week, and

I began to ask him questions and went into the case. I made an examination of his chest and the region of his heart and found the myocardium, the heart muscles themselves, had broken down; for some reason he just had a decomposition of the heart muscles; was suffering from this difficult breathing and had a terrible pain right over his heart. There was some enlargement of his heart. It occupied more space than it should. I saw him again that night or the next day, and he was still suffering from this condition of the heart; what we call ruptured compensation. The heart muscles were broken down. I did not see much change in his condition, it was practically in the same condition. He died late Sunday evening. I do not remember there being any discoloration of the skin there in the region of the heart. The cause of Mr. White's death was from broken down heart muscles caused from exertion or possibly a trauma, a lick, from the history of the case. That is the only way I had to get at it. A blow with the fist in the region of the heart could have caused his death. A hard blow with the fist in the region of the heart on Sunday two weeks before his death could have caused the condition of Mr. White, that I found."

The above-quoted evidence, with other evidence of like import, was ample in our opinion to justify the court in submitting the question of the cause of death of deceased to the jury; hence the insistence of appellant in this connection cannot be sustained.

■ Appellant earnestly insists that in no event could the killing of White, under the undisputed facts and circumstances detailed by the evidence adduced, be murder; that in its worst phase the offense could be no greater than manslaughter, and in this connection requested certain special written charges which the court refused. The law is that when the legal evidence discloses that an unlawful homicide has been committed it is the province of the jury, and not the court, to determine the degree or grade of homicide, under proper instructions of the court. The court ruled correctly and properly charged the jury in this connection. In Mason's Case, 168 Ala. 48, 53 So. 153, the Supreme Court said: "A charge asserting that if two persons meet and hot words follow and they fight willingly and one kills the other, it is manslaughter, is not a correct proposition as applied to all cases."

■ Appellant complains that the verdict of the jury was erroneous, harsh, and in view of the undisputed evidence too severe. In this connection it is insisted that the evidence clearly discloses that there was no intention to kill deceased; that the fact he (appellant) threw away the only weapon in his possession and entered the fight with his bare hands only, and that in the fight he only struck one or two blows, of itself refutes the insistence that he intended to inflict any serious bodily harm upon deceased; and that from all this evidence it is manifestly conclusive that he in no way, manner, or means intended to kill him. This and other argument of like import would doubtless be proper and probably highly convincing upon an application or petition for executive clemency, but in the trial of cases in courts of competent jurisdiction such argument cannot prevail or govern. Courts are not invested with pardoning powers. They must be governed by, and they must conform to, the law as it stands, and the rules governing; hence as we see it, we are unable here to grant the relief to appellant for which his able counsel so earnestly insists. The points of decision involved relate to questions clearly within the sound discretion of the jury, and where this is true courts, appellate or otherwise, cannot substitute themselves for the jury. We discover no reversible error in any ruling of the court. Under the evidence the defendant was not entitled to the affirmative charge. It does not appear that a motion for new trial was made. The judgment of conviction from which this appeal was taken must be, and is, affirmed.

Affirmed.